# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | |
|---|---|
| JOSEPH TRZECIAK, SR.,       ) | |
|         ) | |
|       **Plaintiff,**     ) | |
|         ) | |
|       **v.**       ) | **No: 2:10 CV 358** |
|         ) | |
| **STATE FARM FIRE & CASUALTY**   ) | |
| **COMPANY,**     ) | |
|         ) | |
|       **Defendant.**     ) | |

### OPINION AND ORDER

On August 9, 2010, *pro se* plaintiff, Joseph Trzeciak, Sr., filed a complaint against

defendant State Farm Fire & Casualty Company ("State Farm"). (DE # 1.) State Farm

removed the case to federal court on September 14, 2010. (DE # 2.) Plaintiff alleged that

he sustained a loss to his property during his apprehension by City of Hammond police

on July 26, 2004, during which time the property was covered by an insurance policy

with State Farm, and that State Farm refused to cover the loss to his property. (DE # 1.)

On November 16, 2010, State Farm moved for summary judgment on plaintiff's

complaint. (DE # 16.) Plaintiff filed a response in opposition to the motion for summary

judgment (DE # 21), and State Farm filed a reply. (DE # 26.) State Farm also filed a

motion to strike plaintiff's factual allegations and documents submitted with his

response for failure to comply with the FEDERAL RULES OF CIVIL PROCEDURE, the

FEDERAL RULES OF EVIDENCE, and the LOCAL RULES FOR THE UNITED STATES DISTRICT

COURT FOR THE NORTHERN DISTRICT OF INDIANA. (DE # 24.)

Plaintiff filed a motion to amend his complaint and the magistrate judge denied

this motion as to the claim against State Farm because it would be time-barred and therefore futile, but granted plaintiff leave to file an amended complaint against a new defendant, his former attorney, George M. Petrich ("Petrich"). (DE # 30 at 7-8.) Plaintiff moved to amend his complaint again and that motion was denied by the magistrate judge for failure to comply with the order on the first motion to amend. Plaintiff moved to amend his complaint for a third time on May 20, 2011 (DE # 34), and State Farm objected because plaintiff has attempted to amend his complaint against it without addressing the issue of timeliness. (DE # 35.) As explained below, the court will deny State Farm's motion to strike, grant State Farm's motion for summary judgment, and grant plaintiff's motion to file a third amended complaint, while dismissing State Farm from the complaint.

## Motion to Strike

State Farm asks the court to strike plaintiff's factual allegations and documents submitted in his response to its summary judgment motion because he failed to comply with the FEDERAL RULES OF CIVIL PROCEDURE, the FEDERAL RULES OF EVIDENCE, and the LOCAL RULES FOR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA. (DE # 24 at 2.) It argues that plaintiff's response to the summary judgment motion is a "rambling narrative of allegations without supporting admissible evidence." (*Id.*) It points out that the only two pieces of evidence attached to the response are a report of Investigation from the Bureau of Alcohol, Tobacco, and Firearms about the occurrence at plaintiff's home on July 26, 2004, and an invoice to plaintiff from J.G.M.

Enterprises, Inc. for the board-up of his home. (*Id.*)

In response, plaintiff argues that a motion for summary judgment should only be entertained after the completion of discovery. (DE # 28 at 1.) He contends that State Farm's motion for summary judgment should be evaluated under the standard for a motion to dismiss. (*Id.*) He argues that he was not able to comply with the terms of the policy due to his incarceration and that State Farm refused to fulfill its duties under the policy as a "direct and proximate result of [his] incarceration." (*Id.* at 2.) In reply, State Farm argues that plaintiff's response does not address its motion to strike.[1]
(DE # 29 at 1-2.) It argues that plaintiff's response is not a motion under FEDERAL RULE OF CIVIL PROCEDURE 56(d), and even if it is construed as one, it fails because plaintiff did not provide the required information. (*Id.* at 2.) It argues that plaintiff's submissions are unauthenticated and should not be considered under RULE 56.

As State Farm points out, under RULE 56(d) if a nonmovant feels that he needs additional discovery to respond to a discovery request, he must show "by affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify [his] opposition."[2] If a nonmovant does not file an affidavit as required by RULE 56(d), a district court can rule on a motion for summary judgment without allowing additional

---

[1] State Farm is correct that some of plaintiff's arguments are hard to follow and do not apply to the motion to strike. Some of the arguments, such as equitable tolling based on imprisonment, are more appropriately addressed in the court's analysis on the motion for summary judgment.

[2] While RULE 56(d) was amended effective December 1, 2010, a substantially similar requirement was set forth in RULE 56(f) prior to the amendment.

discovery to take place. *See e.g., Woods v. City of Chi.*, 234 F.3d 979, 990 (7th Cir. 2000).

Requests for additional discovery must be specific and cannot be based only on

speculation. *Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 885 (7th Cir. 2005). Moreover, it

is particularly appropriate for a court to rule on a motion for summary judgment

without allowing discovery first when the nonmovant has not shown how discovery

would be likely to unearth any genuine dispute of material fact. *Woods,* 234 F.3d at 990.

Plaintiff has not complied with RULE 56(d) because he has not provided an

affidavit or a declaration giving the specific reasons that he needs discovery to respond

to State Farm's motion. In his briefs, he has not pointed out what facts discovery could

help him find. Therefore, the court can rule on State Farm's motion for summary

judgment without allowing for discovery.

Further, State Farm is correct that plaintiff has the burden to identify "specific

facts demonstrating that there is a genuine issue for trial." *Trask-Morton v. Motel 6

Operating L.P.*, 534 F.3d 672, 677 (7th Cir. 2008); *Metro. Life Ins. Co. v. Johnson*, 297 F.3d

558, 563 (7th Cir. 2002). To do so, plaintiff must present evidence that is admissible

under FEDERAL RULE OF CIVIL PROCEDURE 56(c). According to RULE 56(e) if a party does

not properly support an assertion of fact or does not address another party's assertion

of fact, the court can consider the fact undisputed for purposes of the summary

judgment motion and can grant summary judgment if the motion and supporting

materials show that the movant is entitled to it.[3] Plaintiff's response consists largely of assertions that are unsupported by the little evidence he has provided.

Still, it is not necessary for the court to strike plaintiff's response. Even if the court considers all the allegations made in plaintiff's various briefings related to the motion to amend, the motion to strike, and the motion for summary judgment and all of the unauthenticated information attached to these briefings, plaintiff has not pointed to anything that shows that there is a genuine material factual dispute as to the issue of the timeliness of his complaint. He has also not shown that discovery would enable him to find evidence that would create a genuine material factual dispute. State Farm's motion to strike will be denied. The court will consider whether plaintiff has properly supported his factual assertions under RULE 56(c)(1) and it will consider a fact to be undisputed if plaintiff has not addressed the fact or presented evidence to dispute it. When appropriate, the court will also discuss how no material dispute would exist even if the plaintiff conducted discovery consistent with his allegations or if the attachments he submitted were admissible.

---

[3] This version of RULE 56 was effective starting December 1, 2010 and plaintiff's response was filed on December 9, 2010. However, even before this time, the FEDERAL RULES OF CIVIL PROCEDURE and the LOCAL RULES FOR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA combined to impose the same requirements. Prior to December 1, 2010, LOCAL RULE 56.1 stated that any facts claimed and supported by admissible evidence by the moving party were admitted to exist without controversy if the non-moving party did not controvert these facts in its statement of genuine issue and did not point to admissible evidence to support these contentions.

## Motion for Summary Judgment

## I.     UNDISPUTED FACTS [4]

Plaintiff owns a property at 4436 Hohman Avenue, Hammond, Indiana (hereinafter referred to as "the property"). (Joseph Trzeciak, Sr. Second Examination Under Oath ("EUO") 22, Def.'s Exh. D, DE # 15-2.) The property was covered under an insurance policy issued to plaintiff by State Farm. (Certified Policy, Def.'s Exh. A, DE # 15-1.) Plaintiff's insurance policy with State Farm included the following provision:

> 6.     Suits Against Us. No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss.

(Certified Policy 14.) It also stated that if there was a loss under the policy, plaintiff had the duty to prepare an inventory of all damaged or stolen property. (*Id.* at 13.) The inventory needed to include the quantity, age, replacement cost, and amount of loss for the property, and it needed to be supported by bills, receipts, and other related documents. (*Id.*) State Farm canceled the policy on August 18, 2004 because the property was no longer owner-occupied. (*Id.* ¶ 6.)

---

[4] Plaintiff has not pointed to any admissible evidence, or even made any argument, that places State Farm's version of the facts into dispute. Therefore, the court accepts State Farm's statement as containing undisputed facts. *Trask-Morton*, 534 F.3d at 677; *Metro. Life*, 297 F.3d at 563. Plaintiff has also not contested the authenticity of any of the documents that State Farm has offered in support of its motion for summary judgment. Therefore, the court accepts the authenticity of those documents for the purposes of this summary judgment motion. *Id.*

On August 23, 2004, a woman who identified herself as plaintiff's son's girlfriend contacted plaintiff's insurance agent, Al Dempsey ("Dempsey") and reported that police had broken into the property, damaged it, and taken plaintiff into custody. (Victor Rodriguez Aff. ¶ 4, Def.'s Exh. C., DE # 15-3.) On September 7, 2004, State Farm received two invoices, dated July 27, 2004, and August 13, 2004, from J.G.M. Enterprises, Inc. for emergency board-up work it had performed at the property at the request, order, and authorization of the City of Hammond police department. (Rodriguez Aff. ¶ 7.) Plaintiff sent a letter, dated August 18, 2004, to State Farm indicating that his son, Joseph Trzeciak, Jr. had the authority to handle his affairs with the house. (*Id.* ¶ 5.) Joseph Trzeciak, Jr. met with Victor Rodriguez, a State Farm claim representative, at the property prior in May, 2005.[5] (Joseph Trzeciak, Jr. Aff., DE # 34-2.) Rodriguez specifically instructed Joseph Trzeciak, Jr. not to remove any "items of personalty from the residence." (DE # 21 at 3; Joseph Trzeciak, Jr. Aff., DE # 34-2.)

On September 1, 2004, State Farm sent plaintiff a letter stating that it was investigating whether the loss to the property was an accidental direct physical loss that would be covered under the policy. (Exh. 1 to Trzeciak EUO, DE # 15-2 at 22.) On October 6, 2004, State Farm sent Joseph Trzeciak, Jr. a letter explaining plaintiff's duties under the policy. (Exh. 3 to Trzeciak EUO, DE # 15-2 at 25.) These duties included

---

[5] In his brief, plaintiff asserts that this meeting took place prior to October, 2004. (DE # 21 at 3.) However, as will be discussed further, in an affidavit submitted by plaintiff with his motion to amend, Joseph Trzeciak, Jr. stated that the meeting took place in May 2005 and a letter submitted by State Farm corroborates that.

submitting a signed proof of loss and an inventory of damaged and lost property and protecting the property from further damage or loss. (*Id.*) On November 1, 2004, State Farm's counsel, Jeffrey Oberlies ("Oberlies"), sent a letter to plaintiff to schedule his EUO and to request documents including a personal property inventory form, documents reflecting purchase of personal property claimed in the loss, photographs or video of the property, estimates of the cost of replacing the property, proof of income for the years before the loss, and any other documents supporting the purported valuation of stolen or lost items. (Exh. 11 to Trzeciak EUO, DE # 15-2 at 37.)

Prior to his scheduled EUO on November 24, 2004, plaintiff hired Petrich to represent him. (Trzeciak First EUO, Def.'s Exh. E, DE # 15-5 at 1.) Plaintiff would not submit to an EUO on November 24, 2004 because Petrich was not present. (*Id.* at 2.) He stated that Petrich had a copy of the November 1, 2004 document request letter. (*Id.*) After being rescheduled several times, plaintiff's EUO took place on February 14, 2005. (Trzeciak Second EUO 119, Def.'s Exh. B, DE # 15-2.) In two of the scheduling letters, Oberlies reminded Petrich that plaintiff was required to produce the documents listed in the November 1, 2004 letter. (Exh. 11 to Trzeciak's EUO, DE # 15-2; Exh. C to Oberlies Aff., DE # 15-4.)

At the EUO, Oberlies again requested the documents in the November 1, 2004 letter, and he requested some of plaintiff's phone records. (*Id.* at 113-14.) On March 7, 2005 Oberlies sent Petrich a cover letter, the transcript for plaintiff's second EUO, and a sheet to sign to verify that plaintiff read the transcript and it was correct.

(Exh. E to Oberlies Aff., DE # 15-4.) Oberlies sent Petrich another request for the

transcript verification form and the outstanding documents on April 11, 2005. (*Id*.)

Plaintiff signed the verification form on May 5, 2005. (Trzeciak Second EUO 119.) In

both cover letters, Oberlies asked Petrich to provide all documents agreed upon in the

EUO and informed him of specific outstanding documents such as the personal

property inventory forms and supporting documents for items listed therein. (Exh. E to

Oberlies Aff., DE # 15-4.) Oberlies received copies of some of plaintiff's tax returns

directly from the IRS, but he never received any of the other requested documents.

(Oberlies Aff. ¶ 9, Def.'s Exh. D, DE # 15-4.)

Oberlies again wrote to Petrich[6] requesting the outstanding documents on

September 28, 2005. (Exh. E to Oberlies Aff., DE # 15-4 at 28.) He stated that State Farm

would be unable to complete its investigation of the plaintiff's claim prior to the one-

year suit deadline because plaintiff did not provide his proof of loss. (*Id*.) The letter

stated that State Farm extended the one-year "Suit Against Us" limitation by 90 days

from October 1, 2005, to December 29, 2005. (*Id*.) State Farm sent Petrich another similar

letter on October 26, 2005, again emphasizing that plaintiff must file suit before

December 29, 2005. (Oberlies Aff. ¶ 10, Def.'s Exh. D, DE # 15-4; Exh. E to Oberlies Aff.,

---

[6] Letters from State Farm to Petrich indicate that plaintiff ended his
representation by Petrich on June 2, 2005 and then reinstated it as of September 9, 2005.
(Exh. E to Oberlies Aff., DE # 15-4 at 26, 28.) Plaintiff does not argue that he was not
represented by Petrich during any time prior to his termination of Petrich in February
2006.

DE # 15-4 at 32.) Plaintiff did not file a suit against State Farm before December 29, 2005. (Rodriguez Aff. ¶ 9; Oberlies Aff. ¶ 11.) Oberlies had not been contacted by plaintiff or Petrich from September 9, 2005 to April 26, 2010. (Oberlies Aff. ¶ 12.)

Plaintiff wrote a letter, dated April 15, 2010, to Rodriguez and sent it to Oberlies. (Exh. F. to Oberlies Aff., DE # 15-4 at 37.) Plaintiff stated that the property had been vandalized in his absence and that he had not heard anything about his claim since his EUO in February 14, 2005. (*Id.*) He stated that he had hired Petrich to represent him in this claim, and he had a lawsuit pending against Petrich. (*Id.*)

State Farm argues that it is entitled to summary judgment because 1) plaintiff failed to bring a suit against it prior to expiration of the insurance policy's contractual period for bringing suit, and 2) plaintiff failed to submit the information required under the policy, thereby breaching the conditions of the policy. (DE # 16 at 1.) In response, plaintiff does not dispute any conditions of the policy. Instead, he argues that he was not able to comply with the policy because he was incarcerated and because he relied on his attorneys to represent him in this matter. (DE # 21 at 5-6.) He also argues that State Farm delayed boarding-up his property, permitting vandals and thieves to enter the property and to steal the documents and information that it had requested. (*Id.*) He argues that he should be excused from his responsibility to provide information under the policy because it was State Farm's failure to assist him in protecting his property that caused him to be unable to provide the information. (*Id.* at 8.) He contends that State Farm was not justified in requesting evidence of his financial condition because it

10

did not appear that plaintiff had committed arson to his own property to collect on his policy. (*Id.* at 9.) Plaintiff also argues that the one-year period for filing the lawsuit was equitably tolled during his incarceration. (*Id.* at 8.)

In reply, State Farm argues that plaintiff was required to comply with the conditions of the insurance policy regardless of his imprisonment or the wrongdoing of his attorneys. (DE # 26 at 5.) It contends that even if plaintiff's financial condition was irrelevant, he still failed to provide documentation of the property he was claiming to be lost or stolen. (*Id.* at 6.) It also argues that Indiana law allows an insurance policy to limit the time in which a suit under the policy can be brought. (*Id.* at 7.) It states that imprisonment is not a disability that tolls the statute of limitations. (*Id.* at 8.)

## II.    STANDARD OF REVIEW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" those materials listed in RULE 56(c) which "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmovant may not rest upon mere allegations. Instead, "[t]o successfully oppose a motion for summary judgment, the nonmoving party must come forward with specific facts demonstrating that there is a genuine issue

for trial." *Trask-Morton*, 534 F.3d at 677. "It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). Furthermore, when evaluating a motion for summary judgment, the court views the record and makes all reasonable inferences in a light most favorable to the nonmovant. *Popovits,* 185 F.3d at 731. If the non-moving party cannot establish an essential element of his claim, RULE 56(a) requires entry of summary judgment for that claim. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (citing *Celotex*, 477 U.S. at 322-23).

## II.     ANALYSIS

### A.     *Breach of contract claim*

#### i.     Contractual limitation on suit

State Farm argues that plaintiff's claim is time-barred because he did not initiate his suit prior to the extended deadline to the contractual period for suit, December 29, 2005. (DE # 16 at 9.) In fact, he began his suit four and half years later. It argues that an insurance policy can impose a one-year time limit for bringing suit and that this limit is particularly reasonable in this case because it pointed out the time limit to plaintiff and extended it. (*Id.* at 9-10.)

In Indiana, contractual shortening of the time to commence suit is valid as long as a reasonable time is provided, *New Welton Homes v. Eckman*, 830 N.E.2d 32, 34-35

(Ind. 2005) (citing *Summers v. Auto-Owners Ins. Co.*, 719 N.E.2d 412, 414 (Ind. Ct. App. 1999)), and the provision does not contravene a statute or public policy. *United Techs. Auto. Sys. v. Affiliated FM Ins. Co.*, 725 N.E.2d 871, 874 (Ind. Ct. App. 2000); *Brunner v. Econ. Preferred Ins. Co.*, 597 N.E.2d 1317, 1318 (Ind. Ct. App. 1992). Indiana courts have repeatedly concluded that a one-year time period for bringing suit under an insurance policy is reasonable. *United Techs.*, 725 N.E.2d at 874 ("Provisions limiting actions on an insurance policy to twelve months have been upheld as valid and enforceable; consequently, actions on a policy that are brought after the expiration of such limitation periods will be barred."); *Brunner*, 597 N.E.2d at 1318. *Cf. Stephan v. Goldinger,* 325 F.3d 874, 877 (7th Cir. 2003); *Thomas v. Am. Family Mut. Ins. Co.*, No. 2:07-cv-162, 2008 U.S. Dist. LEXIS 92440 (N.D. Ind. Nov. 13, 2008) ("It is well settled that 12 months is a reasonable time so long as the insurance company does not cause an unreasonable delay during that period.").

Furthermore, when a contractual limitation on suit is clearly set forth in an insurance policy, it will be upheld in Indiana even when an insurer does not provide other communication expressly informing the insured of the limitation. *Auto-Owners Ins. Co. v. Hughes*, 943 N.E.2d 432, 435 (Ind. Ct. App. 2011) ("We have held that an insurance company generally "ha[s] no duty to inform [an insured] of his responsibilities under the insurance contract or that it intended to assert the one-year limitation of action provision as a defense.") (quoting *Statesman Ins. Co. v. Reibly*, 371 N.E.2d 414, 416 n.4 (Ind. Ct. App. 1978)); *Summers,* 719 N.E.2d at 416.

There is no reason why the contractual limit here should not be upheld. Plaintiff notes that courts have refused to uphold contractual shortening of the time to bring suit when it has adverse effects on third parties. *Goldinger*, 325 F.3d at 877. But plaintiff does not make this kind of argument here - indeed, there do not appear to be any third parties that would be detrimentally affected by the shortened time period.

Furthermore, the discovery rule also would not help plaintiff avoid the time limit. Indiana courts hold that "an insured's failure to discover a loss within the time provided under the contract for bringing a claim is immaterial." *Id.* (citing *Brunner*, 597 N.E.2d at 1318-19); *United Techs.*, 725 N.E.2d at 875 (stating "we note that Indiana courts have followed the reasoning of the vast majority of state courts in holding that failure to discover damages does not toll the contractual period of limitation; rather, a policy's period of limitation begins to run at the time the loss occurs, regardless of whether the insured knew of it"). Instead the contractual time period runs from the date of loss as provided by the time for suit provision in the policy here.

Contractual limitations on the time to bring suit can be avoided if "the claimant can prove fraud, duress, misrepresentation, adhesion, or illusory contract." *New Welton Homes*, 830 N.E.2d at 34-35; *Bradshaw v. Chandler*, 916 N.E.2d 163, 166-167 (Ind. 2009) (stating "we enforce contractual provisions that shorten the time to commence suit as long as a reasonable time is afforded, except where there is fraud, duress, and the like"). The Seventh Circuit has held that a contractual shortening of the statute of limitations was not fraudulent or unconscionable when the plaintiff was not impoverished or

unsophisticated and the limitation was clearly set forth in the contract. *Goldinger*,

325 F.3d at 877.

Similarly, a contractual time period will not be upheld if the insurance company

engaged in fraudulent concealment. Under Indiana's Fraudulent Concealment Statute:

> If a person liable to an action conceals the fact from the knowledge of the
> person entitled to bring the action, the action may be brought at any time
> within the period of limitation after the discovery of the cause of action.

IND. CODE § 34-11-5-1. Plaintiff appears to be asserting that State Farm engaged in

fraudulent concealment by "taking advantage" of his prisoner status. (DE # 28 at 3.)

However, he has not pointed to any evidence showing that State Farm concealed any

facts from him or engaged in fraud, duress, misrepresentation, adhesion, or illusory

contract. Plaintiff has not presented any evidence that he did not knowingly and freely

enter into the insurance policy.

Importantly, the one-year limitation on bringing suit was clearly set forth in the

policy and State Farm extended the deadline and highlighted it in two letters to

plaintiff's attorney. It repeatedly communicated with plaintiff or with the person

appointed as his agent at the relevant times. It sent plaintiff or his agent letters about the

information it needed and it extended the time that plaintiff could sue it by five

months.[7] It also twice went to the prison to conduct plaintiff's EUO and informed him

---

[7] The undisputed facts are that Petrich was plaintiff's agent when State Farm sent
the letters extending the time for suit. Therefore, its delivery of the letter to Petrich was
the legal equivalent of delivering the letter to plaintiff even if plaintiff never saw the
letter. *Auto-Owners Ins. Co. v. Hughes*, 943 N.E.2d 432, 438 (Ind. Ct. App. 2011).

of his obligations under the policy during the second EUO. While plaintiff asserts

generally that State Farm took advantage of his prisoner status, there is no indication

that any facts exist to support this assertion. To the contrary, the evidence submitted by

State Farm shows that while it did not excuse plaintiff from his policy obligations

simply because of his incarceration, it also did not abuse plaintiff's status to its

advantage.

A contractual limitation on suit can be waived by implication when an insurance

company does not deny coverage or liability and proceeds to negotiate with the insured

toward settlement of the claim. *Summers*, 719 N.E.2d at 416 (citing *Schafer v. Buckeye*

*Union Ins. Co.*, 381 N.E.2d 519, 523 (Ind. Ct. App. 1978) and *Interstate Auction, Inc. v.*

*Central Nat'l Ins., Group, Inc.*, 448 N.E.2d 1094, 1103 (Ind. Ct. App. 1983)). Waiver is not

implied when the insurer only attempted to investigate the claim and never made an

offer of money. *Summers*, 719 N.E.2d at 416. Here, there is no evidence that State Farm

ever entered into settlement negotiations with plaintiff. Therefore, the contractual time

limit on suit should be upheld under Indiana law.

ii.     Equitable Tolling

Plaintiff argues that the period for suit should be extended by equitable tolling

because he had a legal disability due to his imprisonment. (DE # 21 at 6; DE # 28 at 3.)

---

The loss occurred on July 26, 2004 and the policy provided that a suit on the
policy must be brought within a year of loss. In its letter to plaintiff, State Farm stated
that it would extend the period "ninety days (90) from October 1, 2005, or until
December 29, 2005." (Exh. E to Oberlies Aff., DE # 15-4 at 30.)

Under Indiana law, a person who has a legal disability when a cause of action accrues may bring the action within two years of removal of the disability. IND. CODE § 34-11-6-1. Indiana law defines a disability as being mentally incompetent, out of the United States, or younger than eighteen years of age. IND. CODE § 1-1-4-5(24). Indiana law included imprisonment as a legal disability until 1982. However, imprisonment is no longer considered a legal disability in Indiana. *Diaz v. Carpenter*, 650 N.E.2d 688, 691 (Ind. Ct. App. 1995); *Bailey v. Faulkner*, 765 F.2d 102, 103 (7th Cir. 1985); *Smith v. Wilson*, No. 3:09-cv-133, 2009 U.S. Dist. LEXIS 98594 (N.D. Ind. Oct. 22, 2009). Therefore, plaintiff did not have a legal disability due to his imprisonment and this status does not excuse him from the contractual time period.

Plaintiff also seems to be invoking the federal equitable tolling doctrine by referencing wrongdoing by his attorneys and by citing to *Goldinger*. While Indiana recognizes an equitable tolling doctrine, it has yet to recognize one as broad as that applied by the federal courts. *Wabash Grain, Inc. v. Smith*, 700 N.E.2d 234, at 239 n.9 (Ind. Ct. App. 1998) ("Indiana has yet to recognize equitable tolling as it is defined under federal law"); *Heck v. Humphrey,* 997 F.2d 355, 357 (7th Cir. 1993); *Warsco v. Becton Dickinson & Co.*, No. 1:08-cv-5, 2009 U.S. Dist. LEXIS 55653, at *17-21 (N.D. Ind. June 30, 2009) ("There is very little Indiana caselaw on equitable tolling."); *Brademas v. Ind. Hous. Fin. Auth.*, No. IP 00-1974, 2003 U.S. Dist. LEXIS 6152, at *34 (S.D. Ind. Mar. 27, 2003). As already explained, Indiana will not uphold a contractual or statutory limitation on the period for suit if fraud or fraudulent concealment has occurred or if the plaintiff suffers

from a legal disability. *Donnella v. Crady*, 185 N.E.2d 623, 625 (Ind. Ct. App. 1962). But these circumstances do not exist in this case. Indiana also has an equitable tolling doctrine that applies when a case has been brought in federal court within the statute of limitations but is dismissed for lack of diversity jurisdiction. *Torres v. Parkview Foods,* 468 N.E.2d 580 (Ind. Ct. App. 1984). This doctrine does not apply here. Thus, Indiana's equitable tolling doctrine does not prevent this case from being time-barred.

This case also does not involve an extraordinary circumstance in which the sparsely used federal tolling doctrine would apply. *Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008). Under the federal tolling doctrine, an untimely filing can be excused if the plaintiff shows that he pursued his rights diligently but was unable to file on time due to some extraordinary circumstance that stood in his way. *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010); *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). A plaintiff's *pro se* status and lack of knowledge of the applicable law do not constitute the type of extraordinary circumstances that would warrant equitable tolling. *See Tucker*, 538 F.3d at 735 (prisoner's limited legal resources and lack of knowledge of the law did not warrant equitable tolling); *Jones v. Hulick*, 449 F.3d 784, 789 (7th Cir. 2006); *Arrieta v. Battaglia*, 461 F.3d 861, 867 (7th Cir. 2006).[8]

---

[8] Plaintiff also mentions that he relied on attorneys to protect his rights and interests under the policy. (DE # 21 at 6.) Thus he may be arguing that the statute of limitations should be tolled by attorney error or malpractice. First, plaintiff's case involves a civil complaint, not a collateral attack - the circumstance in which federal courts often examine attorney wrongdoing as a means of tolling - and Indiana has not adopted the federal standard for equitable tolling. Second, plaintiff has not shown, or

18

Further, equitable tolling is rarely available when the plaintiff could have obtained an extension of time for complying with the deadline. *Yuan Gao v. Mukasey,* 519 F.3d 376, 377 (7th Cir. 2008). In this case, State Farm extended the time for suit when it did not receive what it needed from plaintiff. While State Farm stated that plaintiff's incarceration did not excuse him from complying with his duties under the policy, (Exh. E to Oberlies Aff., DE # 15-4 at 29), it appears possible that he could have asked to extend the time to bring suit and there is no evidence that he did so. In fact, there is no evidence that plaintiff or any lawyer or representative on his behalf contacted State Farm after September 9, 2005. Accordingly, equitable tolling will not apply to excuse plaintiff's four and half year delay in filing his suit.

---

even alleged, that he pursued his rights diligently. On the contrary, evidence submitted by plaintiff shows that he terminated Petrich as of February, 2006 (DE # 21 at 4) and that he knew of Petrich's malpractice as related to the property (but not related to the claim against State Farm) when he filed a complaint against Petrich on August 4, 2006. (DE # 34-2 at 5.) Therefore, it has been at least four years since plaintiff was aware of Petrich's malpractice, and plaintiff still did not file his complaint until August 9, 2010. (DE # 1.)

Third, he does not make any factual allegations or present any evidence as to what his attorneys did with regards to his claim against State Farm that would toll the statute of limitations. He alleges that his second attorney, Beau Brindley told him that his claim was being processed and everything was taken care of. (DE # 21 at 5.) However, generally, attorney misconduct, negligence, and gross negligence do not toll the statute of limitations. *Holland,* 130 S. Ct. at 2566-2568; *Lee v. Cook County*, 635 F.3d 969, 973 (7th Cir. 2011); *Powell v. Davis*, 415 F.3d 722, 727 (7th Cir. 2005) (quoting *Modrowski v. Mote*, 322 F.3d 965, 968 (7th Cir. 2003)). Fourth, the Seventh Circuit has determined that even an incarcerated party is required to "vigilantly oversee" his attorney and is responsible for the attorney's actions or failures. *Modrowski*, 322 F.3d at 968. When an attorney causes a statute of limitations to be missed, the remedy is a malpractice action against the lawyer, not extended litigation against the defendant. *Powell,* 415 F.3d at 727.

Because the court finds that his breach of contract claim is barred by the contractual period for suit, it does not need to address the issue of whether plaintiff breached the contract. However, the court notes that State Farm repeatedly asked plaintiff for documents supporting his claim, and he did not provide those documents and did not tell State Farm at his EUO that he would not be able to provide them.

B.      *Bad faith claim*

Plaintiff has also indicated that he is bringing a claim of bad faith against State Farm. (DE # 28 at 3.) The Supreme Court of Indiana has not addressed the issue of whether a contractual limitation for suit applies to bad faith claims. *Patterson v. State Farm Mut. Auto. Ins. Co.*, No. 1:05-cv-1782, 2006 U.S. Dist. LEXIS 85948, at *15-16 (S.D. Ind. Nov. 28, 2006). Some Indiana appellate courts have held that a contractual limitation period does not bar a bad faith tort claim because that claim rises out of tort, not contract. *See e.g., Dunaway v. Allstate Ins. Co.*, 813 N.E.2d 376, 387 (Ind. Ct. App. 2004). Federal district courts within the Northern District of Indiana have found both that Indiana law is that the contractual limitation does apply to bad faith claims and that it does not apply. *Compare Reveliotis v. State Farm Ins. Cos.*, No. 2:02-cv-310, 2004 U.S. Dist. LEXIS 14115, at *15-16 (N.D. Ind. June 16, 2004) (stating that "in Indiana, claims made against insurers for breach of the duty of good faith, while sounding in tort, are nonetheless subject to contractually agreed upon limitations provisions if brought by the insured") *with Patterson*, 2006 U.S. Dist. LEXIS 85948, at *15-17 ( holding that contractual time for suit provisions "do not apply to tort claims for breach of an

20

insurer's duty of good faith and fair dealing, even where the alleged breach is in essence the wrongful denial or limitation of coverage").

Regardless, even if the bad faith claim is treated as an independent tort claim unaffected by the contractual provisions in the policy, it would still be time-barred. When courts recognize the breach of the duty of good faith as a pure tort, they apply the two-year statute of limitations in INDIANA CODE § 34-11-2-4(2), that provides: "[a]n action for . . . injury to personal property . . . must be commenced within two (2) years after the cause of action accrues." *Domsic v. Allstate Ins. Co.*, No. 2:09-cv-208, 2010 U.S. Dist. LEXIS 86605, 11-12 (N.D. Ind. Aug. 19, 2010). The discovery rule would then apply to this claim. *Id.* Indiana's discovery rule provides that "a tort claim accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *Wehling v. Citizens Nat'l. Bank*, 586 N.E.2d 840, 843 (Ind. 1992). Here, ordinary diligence would have allowed plaintiff to discover that his claim accrued by the time he received the letter from State Farm on September 28, 2005 stating that it still needed the outstanding documents from him to complete its investigation. There is no evidence from which the court can find that plaintiff could not have discovered his injury at this time. He also had no contact with State Farm from October 26, 2005 to April 20, 2010.

Plaintiff has submitted a signed statement from his son, explaining that the latter

met with Rodriguez on May 6, 2005.[9] (DE # 34-2 at 11.) He states that Rodriguez told

him not to remove anything from the home. (*Id.*) Joseph Trzeciak, Jr. also states that

articles of property were already missing from the home. (*Id.*) His statement does not

assert that Rodriguez told him that State Farm would protect the home. The only

evidence that plaintiff provides to show that State Farm was responsible for protecting

the home from further loss was the invoice from J.G.M. Enterprises, Inc. to plaintiff for

board-up work done August 9, 2004 and ordered by the City of Hammond. (DE # 21-2.)

Even if State Farm had told plaintiff that it would protect the property, plaintiff's son,

who was plaintiff's agent, entered the home on May 6, 2005 well after the board up was

completed, so he should have known that the board up was not effective because

vandals were removing property from his home.

Finally as explained below, even if plaintiff's bad faith claim is not time-barred,

he has not pointed to evidence or even made allegations that would support a claim of

bad faith. Accordingly, there is no genuine issue of material fact as to plaintiff's claims

of breach of contract and of bad faith against State Farm. The court will grant summary

judgment in favor of State Farm and dismiss plaintiff's complaint against it.

---

[9] A handwritten note on the statement states that Joseph Trzeciak, Jr. cannot remember the year of the meeting and that it may have been 2001 or 2002. (DE # 34-2 at 11.) For the purposes of determining the statute of limitations period, the court will assume that the meeting took place on May 6, 2005.

State Farm has also submitted a letter that mentions that Mr. Rodriguez entered the property in May, 2005 to videotape it. (Exh. E to Oberlies Aff., DE # 15-4 at 34.) The letter mentions that many of the items that plaintiff had claimed were missing in a letter to State Farm were in fact still in the home as of May, 2005. (*Id.*)

## Motion to File Third Amended Complaint

Courts should "freely give leave [to amend] when justice so requires,"

FED. R. CIV. P. 15(a)(2); but leave to amend is not granted automatically. *Airborne Beepers*

*& Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007); *Foman v. Davis*, 371

U.S. 178, 182 (1962). Courts may deny leave to amend if there is an apparent or declared

reason for doing so, such as "undue delay, bad faith or dilatory motive on the part of

the movant, repeated failure to cure deficiencies by amendments previously allowed,

undue prejudice to the opposing party by virtue of allowance of the amendment or

futility of amendment." *Liu v. T&H Machine*, 191 F.3d 790, 794 (7th Cir. 1999) (quoting

*Foman*, 371 U.S. at 182). In this case, plaintiff's request for leave to file a third amended

complaint will be granted, but the claim against State Farm will be dismissed because it

is futile.

The amended complaint adds no new allegations that would allow plaintiff to

proceed on a breach of contract claim. As discussed above, a contractual limitation on

bringing suit is upheld as long as the time period is reasonable, it does not contravene

statute or public policy, and there has not been fraud, duress, misrepresentation, or

adhesion by the insurer. *New Welton Homes*, 830 N.E.2d at 34-35. Under RULE 9, plaintiff

would need to plead allegations of fraud or fraudulent concealment with particularity.

Plaintiff's third amended complaint is futile because he makes no allegations of fraud or

fraudulent concealment that would allow him to avoid the contractual limitation for

bringing suit.

Plaintiff's third amended complaint also does not state a claim of bad faith. Plaintiff has not alleged any acts of bad faith that he discovered sooner than two years ago, and therefore, his claim is barred by the statute of limitations. Even if the claim was not barred by the statute of limitations, it would still be futile because plaintiff has not sufficiently alleged a claim of bad faith. A finding of bad faith requires evidence of a state of mind of "conscious wrongdoing" including "dishonest purpose, moral obliquity, furtive design, or ill will." *See Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005) (internal quotation omitted); *Colley v. Ind. Farmers Mut. Ins. Group*, 691 N.E.2d 1259, 1261 (Ind. Ct. App. 1998) ("Poor judgment or negligence do not amount to bad faith; the additional element of conscious wrongdoing must also be present."). A plaintiff must be able to show that there was no reasonable basis to deny the claim and that the insurer knew that there was no reasonable basis. *Balzer v. Am. Family Ins. Co.*, No. 2:08-cv-241, 2011 U.S. Dist. LEXIS 32701, at *14-16 (N.D. Ind. Mar. 28, 2011). Although the scope of the duty of good faith is not precisely defined, the Indiana Supreme Court has identified a non-exhaustive list of actions that can constitute bad faith. These are: "(l) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968 (Ind. 2005); *Erie Ins. Co. v. Hickman,* 622 N.E.2d 515, 519 (Ind. 1993).

Plaintiff's proposed complaint alleges that State Farm's representative told his

son not to remove anything from the property. (Pl.'s Third Am. Compl. ¶ 5.) He also alleges that State Farm did not tell him to make arrangements to protect the property. (*Id.* ¶ 6.) He claims that through these statements and omissions State Farm prevented him from taking steps to protect his property, causing further harm to the home. (*Id.*)

First, Rodriguez's statement that plaintiff's son should not remove property from the home does not show that State Farm deceived plaintiff or prevented his home from being protected. Plaintiff has not provided any other statement from State Farm to show bad faith. Second, the insurance policy stated that after loss the policyholder had the duty to "protect the property from further damage or loss [and] make reasonable and necessary temporary repairs required to protect the property." (Certified Policy 13.) State Farm reminded plaintiff's son of these duties in the letter it sent to him on October 6, 2004. (Exh. 3 to Trzeciak EUO, DE # 15-2 at 25.) Even if Rodriguez told plaintiff's son not to remove anything, it was plaintiff's responsibility to ensure that the property was secure.

Third, Joseph Trzeciak, Jr. stated that property was already missing from the home before Rodriguez told him not to remove anything. He claims that Mr. Rodriguez met with him almost a year after the date of loss. If items were already being removed from the property and the house was not secure by this time, Mr. Rodriguez's statement was unlikely to make a difference. Additionally, by this time, plaintiff had already been advised numerous times by State Farm that he was responsible for providing information requested by State Farm.

Fourth, even evidence submitted by plaintiff shows that the City of Hammond, not State Farm, ordered the board-up of the home. Also, the board-up took place on August 9, 2004 (Pl.'s Exh. B, DE # 21-2,) well before Joseph Trzeciak, Jr. met with Rodriguez on May 6, 2005. Fifth, plaintiff claims that he "employed attorneys to represent [his] interest by preserving the residence and property from further losses through theft and vandalism." (DE # 28 at 2.) Thus, plaintiff seemed to acknowledge that he had the duty to protect his home. Sixth, Rodriguez allegedly made his statement to plaintiff's son on May 6, 2005. And there is no evidence that plaintiff had any contact with State Farm after October 26, 2005. Therefore, a claim of bad faith premised on Rodriguez's statement or any other contact from State Farm would be time-barred by the two-year statute of limitations for torts. Therefore, the amendment against State Farm would be futile. Plaintiff's request to amend his complaint will be granted, but State Farm will be dismissed from that complaint.

In sum, defendant State Farm Fire & Casualty Company's motion to strike (DE # 24) is **DENIED**. State Farm's motion for summary judgment (DE # 14) is **GRANTED**. Plaintiff's third motion to amend (DE # 34) is **GRANTED.** However, State Farm Fire &Casualty Company is **DISMISSED** from the complaint. The clerk is directed to enter **FINAL JUDGMENT** in favor of State Farm Fire &Casualty Company. The case proceeds only against George M. Petrich.

<b>SO ORDERED.</b>

Date: August 15, 2011

s/James T. Moody

JUDGE JAMES T. MOODY
UNITED STATES DISTRICT